Plaintiffs have standing in this case as they want to what they want to do is directly contrary to the law as the law is on the books and is directly contrary to defendants interpretation of that law. Aren't you? Aren't you protected by the by the injunction that's been entered in the. No, we're not. You're on the free enterprise injunction does not cover subsection B. In addition, defendants promises not to enforce subsection B in light of the free enterprise injunction is ineffectual to deny standing in this case. And here's why on that. First, the most tellingly the rule that the defendants passed in light of the free enterprise injunction is rule 22.5. And in that rule, it says nothing about subsection B. In fact, it specifically says it covered. It provides an exception for subsection A and then to find 3003, another section of the election code. But it specifically did not deal and did not provide an exception or a safe harbor, if you will, for subsection B. So rule 22.5 is important. So I actually want to read it. It states a political committee's acceptance of a political contribution from a corporation or labor organization does not constitute a violation of section 253003B or 253094A of the election code. So the very rule that they passed in light of the free enterprise injunction does not cover subsection B. Subsection B is a separate section. Even the defendants have argued it stands on its own. It is has separate interest at play. It's a different part of the code. And so it is not covered by their rule. They have not passed a rule that covers subsection B. They have said nothing on their website. We can tell that's part of the record where they say that subsection B is covered under the free enterprise injunction under rule 22.5. And this makes sense because the actual terms of the free enterprise injunction do not cover subsection B. That case was about subsection A and it did not deal with the recall election or subsection B. The limited nature of injunctions, the rule 65 of the Federal Rules of Civil Procedure, which requires injunctions to be very specific and to detail out the specific acts that are being enjoined. If you apply the rule of specificity to this injunction, it does not cover subsection B. It only covers subsection A. In addition, the rule of severability, that if a statute can be severable, then the injunction will not cover the other parts. Again, that counsels here in favor of the fact that subsection B is not covered by the free enterprise injunction. And then lastly, Article III's requirements. Excuse me. I don't remember the language, and I wish it would slow down just a bit. I can't quite hear as fast as you talk. Thank you. But I thought the injunction also had some broader language, specifically referring to subsection A, and then you know better than I do, and other rules and regulations affected thereby, whatever. Isn't that sufficient to cover this related procedure under B? No, that would not be sufficient. That would not be covered by the injunction. The rule of Federal Procedure 65, which requires injunctions to be very specific and to detail out the specific provisions, is covered by the injunction. I did find the language. Isn't it pretty specific? Any other laws that directly or indirectly prohibit contributions to a direct campaign expenditure-only committee for the purpose of making direct campaign expenditures? No, we do not believe that actually covers subsection B. That only covers subsection A. In fact, the only thing that was litigated in that case, the Article III prohibits courts from issuing advisory opinions and only to deal with the actual controversy that's before the court. And in that case, the recall elections were not before the court in free enterprise. And so the injunction did not cover subsection B. It's a separate part of the code. It has a separate interest that pertains to it. It works separately than measures in general. In fact, they have specifically argued in this case the reason why 096 doesn't cover recalls is because specifically it's a different part of the code than subsection A. And because of that, the free enterprise injunction does not cover it. We think, again, most tellingly is that when they passed their rule, which articulates how they're going to enforce the free enterprise injunction, they never mentioned subsection A. In addition, they put nothing on their website saying subsection B is not covered or there's a safe harbor provision for violations of subsection B. The public has no way to know that subsection B is covered under the injunction. If you read the law of Texas, that still is on the books, and there are no rules or regulations that speak to subsection B being covered. But under the broad language that Judge Southwick has quoted, under that plain language, it would be covered, would it not? Any reasonable reading of that language? I don't think so. It does not cover. It does not mention subsection B. It just simply makes a general rule. No, it's much broader than that. It covers every – I mean, I don't understand. If you were a state official and you read the words of that injunction, would you dare to counter that language by trying to enforce? I think that's a fair assessment that they could do because the face of the law still prohibits political contributions concerning recall elections. And there is no exception. There's no safe harbor concerning subsection B. It only pertains to subsection A, and our clients are very fearful. And there should be confidence that you can proceed in the democratic process and not be concerned that your actions might somehow put you subject to criminal sanctions or to thwart the entire democratic – the matter that you want to support, in this instance the recall election. You should be able to participate with confidence in that process. And here they cannot do that because the face – Your clients can't take yes for an answer. I'm sorry? Your clients cannot take yes for an answer. And there's good reason for that. Suppose – well, you're going to have to explain that because suppose they did try to issue a cease and desist order or something like that to one of your clients or some other church out there, and then they would be hauled into court. You could haul them into court for contempt. I'm not sure. You wouldn't do that? Yeah, and I'm just going to tell you why they cannot operate with confidence in the situation, because they are aware of what happened in the Cook case in El Paso, Texas, involving this exact same election code provision that banned corporate contributions to recall elections. And in that case, the appellate court of Texas ruled that just simply a corporation's putting on their website that, hey, go circulate a recall petition, support the recall effort, their own actions constitute a violation. And in that case, four grand juries were convened that our clients are aware of, and it's in the pleadings. So they are aware of what happened in the Cook case, that if they get involved in this case and the law does not back them up, then the objective candidate could bring a lawsuit against them, as happened in Cook. The local DA could bring a lawsuit. The Texas Ethics Commission could bring a lawsuit enforcing it. So our clients, because the face of the law directly prohibits what they want to do, they cannot act in good faith and good confidence. It sounds to me like an argument that abortion providers would make and say, well, it's the law and joint abortions, but it's still there on the books. I mean, that's what I, you know, doesn't quite make sense to me. But the one difference I might say in this case is that it was recently applied against a church and against individuals that participated in that effort to stop the recall election. But an injunction only binds the people who are parties to the injunction, right? Exactly. You can't stop a rogue. I mean, even if we were to agree with you, I don't think you can't stop a rogue prosecutor from refusing to abide by the injunction. I would agree with that, but still the question is, is this a proper party to have? And they are a proper party because they are enforcers of the election code. The election code on its face prohibits what we want to do. They have not done anything affirmatively to say subsection B. The only statements they have made saying subsection B is covered under the free enterprise injunction or under Rule 22.5 is to enact Rule 22.5. But Rule 22.5 doesn't mention subsection B at all. And you've said that three times. I understand that you're answering judges' questions, so I'm not criticizing you, but you have made that point at least three times, maybe four. But all you need, it seems to me, I'm not suggesting what we're going to do after we've heard this all and write an opinion, but if you had an opinion from this court saying that the injunction covers what you're talking about here, then you'd be in good shape in terms of being protected from prosecution, it seems to me. Absolutely. An injunction issued by this court, in this case enjoining the applicability of subsection B, would give us the relief that we want. No, if you don't have standing, we can't do that. But we can certainly opine on what the meaning of the injunction is. It's juxtaposed with whatever law remains on the books. That definitely would be helpful. But we do believe we do have standing. And here's another reason why we have standing in this case. Even under the defendant's interpretation of the free enterprise injunction in Rule 22.5, what we want to do is still contrary to the law, and here's why. We want to be able to be free to coordinate with other political committees that contribute to candidates. We want to be able to contribute in kind non-fungible assets. So, for instance, use of facilities or putting on your website, hey, go support the recall. Those are all in kind non-fungible contributions, and we want to be able to do those. And because we want to do those, we would not qualify as a DCE-only committee. And because we would not qualify, then even under their interpretation of the law, we can't become a DCE-only committee. And that, the court had mentioned in the Catholic leadership case, the interest of anti-circumvention. But there is no anti-circumvention interest in regards to non-fungible assets that are in kind contributions. Those cannot be somehow, you cannot circumvent the prohibition against contributions to candidates by engaging in those kind of contributions. And so that specific issue is in direct contradiction to the defendant's interpretation of the rule. So. Tell us if you know, and if you don't know, that's fine. But do you happen to know were there efforts in the past session of the legislature to make any changes as it regards these subsections? I'm not aware. I do know an effort was made, but it wasn't successful. But I do not know exactly what effort was made. But it is a sincere problem. It chills our client's speech. And the remedy that I would propose would solve it, and it's an easy remedy. And that is this. The first one is let's enjoin subsection B in its entirety. There is no legitimate interest to treat recalls differently than other measures or contributions to candidates. The state has offered up no sufficient reason to enjoin, to justify recalls as a separate category of election speech worthy of separate treatment. So let's enjoin it in its entirety. It's a content-based speech restriction. It's based upon the corporate identity of the speaker. And there's no reason to treat it differently. Well, does that mean that recalls would go unregulated? No. They would fall under subsection A. So under subsection A, that controls contributions concerning measures, which a recall is a measure. But let's say, well, what if they want to make a contribution to a relevant candidate? Well, it's also covered under subsection A because under subsection A, it prohibits corporate contributions to candidates. So you don't need in the law to treat recalls separately. It could go through subsection A. That would be an easy fix. And so the remedy that we would propose is subsection A being enjoined to allow corporations to use its resources in the context of a recall petition drive, as long as there's no coordination with a relevant candidate or transfer of fungible assets to a political committee that contributes to candidates. So that additional injunction, in addition to the free enterprise injunction, would cover this situation. That would clean up the election code because now you're not treating recalls differently, and there is no basis under the law to treat recalls differently than in other measures. And we believe that would satisfy the unconstitutional problems with subsection B. So with that, that actually covers what we do believe we do have standing under the face of the law. It prohibits what we want to do. But even if you want to take their promises not to enforce it as being effectual, even then what we want to do contradicts the law because we want to be free to make contributions to political committees, in-kind contributions of non-fungible assets to political committees. Of course, you could form a committee yourself. That would solve the problem, too. Well, not necessarily. There is no requirement under the law that they have to form a political committee to engage in this kind of speech. But in this situation, if they want to just participate in another effort, so they're not the political committee themselves. If you're a committee, you have to submit to various kinds of reporting and filing requirements, right? Yes, and that is an important issue to bring out in this case is our clients would be a political committee irrespective of whether they file the records of treasurer. If they engage in the conduct they want to engage in, and the defendants have never questioned the sincerity of the plaintiff's intent to engage in that conduct, they would become a de facto political committee whether or not they file the magic paperwork. And even defendants can see that. So if they do what they want to do and say they're going to do, there's been no question as to their sincerity, they will at least be a de facto political committee and then confer standing. So with that, I'll yield the rest of my time for rebuttal. Thank you very much. Okay. Thank you. Mr. Barbara. No, excuse me. Howell. May it please the Court. It's important to keep in mind the conduct at issue here. The plaintiffs lay out in their complaint a list of activities, A through M, in which they wish to engage. Of that list, all but K and L are not covered by 094B at all because they're either a direct campaign expenditure or they're not a political contribution in the first place. The only two things they allege that could potentially be covered by the statute are coordinating with other churches in recall elections, including spending money and raising money together, and spending money from their regular budgets to support recall efforts. But those are not prohibited post-Texans for Free Enterprise. What about the point that was being pressed so firmly here that they want to make in-kind contributions to other committees? How does that fit into your analysis? Right. For the purposes of this analysis, whether a contribution is in-kind or is money does not matter. As long as it's not a political contribution that is coordinated with a candidate or officeholder, it's not prohibited post-Texans for Free Enterprise. Is there anything that would potentially make that distinction? Able counsel on the other side believes it's important. On what basis – I should have asked him, I guess – on what basis would in-kind be different, arguably? It's unclear because the only way – really, the only distinction here is because there is some discussion about is it fungible or non-fungible or in-kind or not. None of that distinction matters. All that matters is whether or not the contribution is made in coordination with a candidate or officeholder. If it's not, it's not banned by the current state of this law because Texans for Free Enterprise now is the law of the land. And that simply states that regardless of what statute, how it reads, there cannot be restrictions on non-coordinated political activities. And with regards to their standing, what this really comes down to – so the Cook case, as we explain in our briefs, misreads the statute and predates Texans for Free Enterprise. So to the extent that the El Paso Court of Appeals thought that there may be a valid enforcement under 094B for non-coordinated activities, they're wrong. And Texans for Free Enterprise came after that. And that injunction, that decision, all are in effect now, and that's what the law of the land is now. Have you ever heard of an injunction that covers one part of a statute and then says all other statutes? I can't cite a specific example, but the injunction is effective because it – because A was what was at stake in Texans for Free Enterprise, of course the injunction only mentions A, but it also – the case itself contemplates the broader question of whether or not the government can restrict corporate contributions that are not coordinated with a candidate for officeholder. And so that's why it says any other law, because that's the problem that Texans for Free Enterprise is trying to address, is that states can no longer restrict that kind of activity. And so that's why it was appropriate for the Court to say A or any other law. And so that's – and that is – that is the enforcement scheme now that the Commission is operating under post-Texans for Free Enterprise. And that's why – One of the problems – I thought you were almost – I should have cut you off right there, but one of the problems with injunctions, and it's come up in times when you look at contempt for violation of an injunction, is the need for specificity in order for it to be enforced. And this is far from specific. What we're talking about now is a very general part of the injunction. So someone on behalf of Texas Ethics Committee or Commission or something else acts in violation of what we think is a reasonable interpretation would have a pretty good defense, I would think. Not necessarily in this situation, but that would be the defense, that it wasn't specific enough to tell me what I could not do. So that's the other side of this injunction that we're looking at. And a fair point, and you didn't have – that Judge Jones raised, and you didn't have an answer. Have injunctions of this general nature been enforceable when you get into the general language and not to the specific language? One important point to keep in mind here is we're asking whether or not they have standing. And for the purposes of whether or not these plaintiffs have standing against these commissioners, the injunction and its enforceability in this particular scenario is not – though we do believe that the injunction is enforceable and prevents our enforcing 094B just on its own, for the purposes of standing, we don't have to have the injunction. The injunction doesn't have to be in place in order for them to be deprived of Article III standing here. The reason they don't have standing is because there is nothing in place, there is no case for controversy. The injunction is a portion of that, but what this really comes down to is a voluntary cessation doctrine, right? And it is the commission's position, consistent with Texas for Free Enterprise, consistent with that injunction, and consistent with Rule 22.5, which it has promulgated through the formal Administrative Procedure Act procedures, that it is not going to enforce the election code, any provision of the election code, in a way that restricts political contributions as long as they are not coordinated with a candidate or officeholder. So I assume you would have no objection to an opinion from this Court that would say that this plaintiff lacks standing for the reason that the existing injunction covers the conduct in which they wish to engage. That would be a holding by this Court on the jurisdictional issue or the standing issue, and an explanation of why there is no standing. Yes. If I were writing the opinion for you, Judge Smith, that is how I would resolve the case. I think it should be resolved on jurisdiction. And both sides would be happy, it seems to me. That would give what Texans for Free—I'm sorry, not Texans. What the plaintiffs here say throughout is they want clarity on the law. They want to be able to do the things that they've said they want to do. And I want to circle back to that. But an opinion of that nature would say, yes, your proposed activity is not restricted. Now, one way they try to— Does this cover 096 also? Yes. To the extent that any measures-only activities are not coordinated with a candidate or officeholder, then they can't be restricted. And really their complaint in 096 is that they say they shouldn't have to form a committee. But this Court's already upheld the committee formation requirement as valid. That's Catholic leadership. And plenty of cases, Citizens United and Buckley v. Valeo, and that whole line of cases has upheld formation requirements as having a valid informational interest. But I wanted to circle back quickly to their claim that even if 094B can't be restricted to the kinds of political contributions we're talking about, they still run afoul of it, even under our interpretation. And that's incorrect. There are three key parts of the record here that lay out what their intended conduct is. It's their complaint. It is their responses to our interrogatories. And it is their testimony. And throughout, in each one of those, they have consistently stated, we want to coordinate with other churches and potentially other committees, but we don't want to coordinate with candidates or officeholders. They have been emphatic in that. They have been consistent in that. And what's happened now is they say, well, no, we also maybe want to coordinate with some non-direct campaign expenditure committees, but that appears nowhere in this summary judgment record that the district court based its decision on. All we have is their repeated insistence that they do not intend to contribute to candidates or officeholders or PACs associated with them. And so based on the conduct they've alleged that they intend to engage in, to date there's nothing that would put them afoul of the election code post-Texans for Free Enterprise. That's why they don't have standing. And our interpretation of the law is consistent with that. How do we know the Texas Ethics Board won't go after this? Because we had the case yesterday where the Texas Ethics Board was purporting to go after a candidate for claiming she was a psychologist. So how do we know that some other board isn't going to have its own rule? Well, for the purposes of standing in this case, it only matters what the Ethics Commission would do. Whether it's a facial challenge or an as-applied challenge, we can only, for the purposes of whether there's a case or controversy here, as you noted earlier, Your Honor, there's nothing we can do to prevent a rogue prosecutor or a rogue board or some other board from doing what they might do. Because the commission is the only defendant in this case. Right. The members of the commission. Right. And as Your Honor noted, it would be imprudent, to say the least, for someone post-Texans for Free Enterprise to go after somebody for this sort of thing. Well, see, I mean, that's sort of the problem, isn't it, with defining the scope of that other injunction? Texans for Free Enterprise. Right. Well, to come back to that, but that's still whether the injunction applies or whether we just look at the opinion itself and how it is now set, as I said, the law of the land, is that what they intend to do cannot be restricted. And so they don't have standing. As against the Ethics Commission, whether the El Paso DA or something somewhere down the road decides to do something differently, we can't say. But there has to be, for them to have causation, I mean, I'm sorry, standing here, there has to be a causal link between an actual injury or imminent injury and the defendant's actions, and that just is not present here. To kind of come back to this concept of voluntary cessation, we cited the McKinley v. Abbott case, but I also wanted to point the Court to, because I think this is consistent with the question of does the injunction apply or not. Another case is Sossaman v. Lone Star State of Texas from a few years ago, and it walks through sort of the Court's history of its application of the voluntary cessation doctrine. And in that case, it involved an inmate who had been in solitary confinement, and at the time, TDCJ's policy was to exclude those people from certain religious ceremonies. And in response to the suit being filed, the executive director of TDCJ at the time changed the policy and said, no, we're going to go ahead and let these guys participate in the religious ceremonies, and then filed an affidavit with the district court saying, we've changed our policy. And on appeal, this court said that affidavit, that change of policy alone, was enough to deprive the plaintiff of standing. Now, if you compare that to this case, we have far more than just an affidavit. We have a rule that's been promulgated. We have a whole line of case. This is not just done in response to their filing complaint. This was a rule promulgated, the Texas for Free Enterprise decision coming down. All of that has set us – that is what underlies our promise not to enforce. And the standard as to whether a plaintiff does not have standing in this sort of setting is whether or not it's absolutely clear that the allegedly wrongful conduct will not recur. And that is abundantly clear here. I would also note that in Sossaman that the court pointed out that the government is entitled to a presumption of good faith in that setting. So I just – this is somewhat repetitious, but I want to be sure while you're at the podium that we understand properly. You're saying that as far as you're concerned, under the injunction that is in place in Texas for Free Enterprise and under any other more inclusive voluntary secession announcement by the state, that all of the acts in which this plaintiff alleges it wishes to engage would not be deemed unlawful or would not be prosecuted or in any way challenged by, again, your client, the members of the Ethics Commission. Yes, that is correct. But I want to be clear that that statement is qualified by the fact that what they have alleged they will do in this record. Now, because I expect that my friend in opposition will come up and say, well, if you look at our reply brief, we said we may want to coordinate with the Religious Freedom PAC. Well, that intent was never expressed in the district court. All right, so that's just not – you would say that's not before us because it was neither raised in the district court nor in their opening brief. Right, and that's why I say it's important to keep in mind what the key parts of the record are, where they in this record say what their intent is. It is in the complaint, in their interrogatory responses, and in their testimony. And I would note that when they mention that they want to coordinate with the Religious Freedom PAC in their reply brief, they do include a record cite for that. But if you look to the actual part in the record where they're citing, they're referring to their response to our interrogatory 11. Well, what's wrong with the – I mean, it's the Religious Freedom PAC. I'm missing something. It's not associated with a candidate or a candidate PAC, or is it? Well, that's the problem here, right, is that there's not a record really explaining what they are, what they do. Well, you sound as if you know what it is, which is why you're qualifying. Right, well, because it's unclear. It's possible that if they are indeed a direct campaign expenditure only committee, then that's okay. We don't even have to worry about it post-Texas for free enterprise. But I believe in the reply brief they say it's not a DCE only committee and it wouldn't qualify as one because perhaps some of its activities are engaged with office holders. And so at the end of the day, though, none of that matters because what matters here is what's in the record and what the district court had to rely on. And throughout they've said we have no intent to – what matters here, throughout they've said we have no intent to coordinate with a candidate or office holder. All right. And because of that, they have no credible fear of enforcement and thus no standing, and I would therefore urge the court to affirm unless there are any additional questions. No, sir. Thank you. Thank you. Okay, Mr. Nabarro. Thank you, Your Honors. And hopefully I can help cut through some of this confusion on at least two central points in this case in my five minutes. First of all, with respect to the issue of this interest in how far or how broadly can the court read the free enterprise injunction, I think that issue is answered in our briefing. And if the court sits down and tries to write an opinion, you look at the free enterprise injunction and there's reference to any other regulation or law, and tries to write an opinion to apply that to a statute that was never at issue in free enterprise, you're going to run smack into the Veneman case, John Doe No. 1 v. Veneman, which is Fifth Circuit, 2004, where they said specifically that the scope of injunctive relief is dictated by the extent of the violation established. And this court, when you read the free enterprise opinion, you'll see there was never any discussion of recall speech at issue in free enterprise. It was all candidate-related independent expenditures. And so if the plaintiffs in free enterprise had said, hey, court, why don't you also in joint subsection B, even though we haven't talked about that stuff, the court would have to say we don't have Article III jurisdiction. Well, what about Judge Smith's idea that if we say you don't have standing because the injunction was that broad? Well, that's the point that I'm getting to because Veneman prevents the— You're telling us we can't do that. I'm telling you that the free enterprise injunction cannot be enforced in a contempt setting against the Ethics Commission. And so you can't look back at it and say that that injunction should be read as if it applied to some provision that was never at issue in the case. Isn't that rather paranoid? Well, no, Your Honor. I mean to think that the Ethics Commission is the defendant and they're bound by a previous injunction and then a subsequent panel of this court tells them and furthermore that injunction meant what it said and it also concerns subsection B and 906, I think it was, and then they say, no, it doesn't. Well, I think they're asking the court to write that opinion. It does more violence to the idea of limited federal jurisdiction, limited to the facts before it and the case before it, than does the fact that recognizing that there is standing here. Because that injunction cannot be read expansively to infer prohibited conduct. That's just black-letter law on injunctions. And John Doe v. Vindman illustrates that principle and we've got other cases in the brief that illustrate that as well in our reply on page 23. It would also— The counsel also discussed voluntary cessation, a doctrine certainly that we have recognized. Why is that not sufficient? Well, in this context, Your Honor, we have several cases cited here as well on the issue of voluntary cessation, but voluntary cessation, especially in the First Amendment context, does not deny a plaintiff standing when there's a facial prohibition on political speech on the books. The government's mere promise that we're going to, in some cases, involve situations where, for example, Citizens for Responsible Government, which we've cited in the reply, 10th Circuit said, I understand that the Secretary of State is saying they're going to interpret the term persons to exclude these plaintiffs. Exactly the situation here, but that's not consistent with the facial statute. And so they're still standing because there's a chill on people's speech. And Davidson and also Majors v. Abell, also from the Seventh—well, that was a Seventh Circuit case. Both pointed out that not only was there a facial chill because of the statute on the books and the fact that the defendant's promise doesn't negate that, but they also pointed out it's relevant that there was no statement on the Commission's website in those cases disavowing enforcement of the provision at issue. And that's the same situation you have here. I have the impression that if we wrote an opinion along the lines that Judge Smith suggested, gave you protection, you would file for rehearing. I'm sorry? I didn't catch the last part of your question. It sounds like if we gave you basically what you should want in the nature of this opinion Judge Smith outlined, you would file for a petition for rehearing to take that in bank to keep us from doing what we're recommending or suggesting up here we might do. I'm not asking what you actually would do, but as getting back to Judge Jones' point earlier, you will not take yes for an answer. Well, I only have, I see, 20 seconds left, but I'll try to answer the question and get to the in-kind contributions. Well, that wasn't so much a question as an observation, I guess. Why don't you use your 15 seconds for something else? Okay, this is a critical point because even if you set all that aside and credit their interpretation of how they say they're going to enforce the law, the State just made a very critical concession. He said in-kind contributions are treated the same under the Election Code as direct contributions of money, and that is absolutely true. And that's a big problem because in the context we're discussing, we're not transferring anything fungible to any committee that uses other resources to contribute to candidates. We're talking about engaging in activity that is deemed to be a reportable contribution under the Election Code. But just because the State can require it to be, can define it as a contribution and require it to be reported for informational purposes does not mean that there's a quid pro quo threat that justifies a ban. And you have to look at Catholic leadership and the different interests at stake and the difference between a disclosure requirement and a ban, which 094B is an outright ban. And there's no, Catholic leadership says when there's no transfer of a fungible asset that can be circumvented to give to a candidate through a PAC, there is no anti-circumvention interest. And so while the State is right that there is no difference in the Election Code, that's a problem on these facts. And my time is up. I thank the Court with that we submit. Okay, thank you very much.